IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:16-CV-337-RJ

JOAN LORETTA CHAMBERLAIN,          )
                                   )
        Plaintiff/Claimant,        )
                                   )
              v.                   )          O R D E R
                                   )
NANCY A. BERRYHILL, Acting         )
Commissioner of Social Security,   )
                                   )
        Defendant.                 )

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-21, -23] pursuant to Fed. R. Civ. P. 12(c). Claimant Joan Loretta Chamberlain ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, Claimant's Motion for Judgment on the Pleadings is denied, Defendant's Motion for Judgment on the Pleadings is allowed, and the final decision of the Commissioner is upheld.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability, DIB, and SSI on January 2, 2013, alleging disability beginning July 7, 2012. (R. 240–50). The claims were denied initially and upon reconsideration. (R. 111–68). A hearing before an Administrative Law

Judge ("ALJ") was held on February 26, 2015, at which Claimant, represented by counsel, a vocational expert ("VE"), and Claimant's roommate appeared and testified, and Claimant amended the onset date to June 24, 2013. (R. 80–109). On April 21, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 60–79). Claimant then requested a review of the ALJ's decision by the Appeals Council, (R. 58–59), and submitted additional evidence as part of her request, (R. 317–21). After reviewing and incorporating some of the additional evidence, the Appeals Council denied Claimant's request for review on August 4, 2016. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the

2

[Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

### III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520 and 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily

3

living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper assessment of Claimant's residual functional capacity ("RFC"); and (2) improper analysis of whether Claimant's impairments meet or equal Listing 12.04. Pl.'s Mem. [DE-22] at 2.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 65). Next, the ALJ determined Claimant had the following severe impairments: depressive disorder, social phobia, and alcohol use disorder. *Id.* The ALJ also found Claimant had a non-severe impairment of plantar spurs. (R. 66). At step three, the ALJ concluded Claimant's impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 66–68). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments had resulted in mild restriction in her activities of daily living, and moderate difficulties in social functioning and with regard to concentration, persistence, or pace, with no episodes of decompensation. (R. 67). Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding that Claimant had the ability to perform a full range of work at all exertional levels but with the following restrictions:

> [T]he claimant is capable of simple, repetitive tasks in a work environment where changes in work setting/procedure were infrequent and gradually introduced and

4

where there was only occasional contact with coworkers/supervisors. The work tasks must not require direct customer service, work in a team setting, or fast-. paced production rate work.

(R. 68–73). In making this assessment, the ALJ found Claimant's statements about her limitations were not entirely credible. (R. 70). At step four, the ALJ concluded Claimant did have the RFC to perform the requirements of her past relevant work as a kitchen helper. (R. 73).

## V. DISCUSSION

### A. The RFC Determination

Claimant contends that the ALJ erred in three ways with respect to the RFC determination: (1) he failed to properly weigh opinion evidence; (2) he failed to account for Claimant's mental impairments, specifically arguing that the RFC is insufficient to account for Claimant's moderate difficulties in concentration, persistence, or pace; and (3) he failed to properly consider state agencies' disability determinations. Pl.'s Mem. [DE-22] at 8–14.

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their

5

cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7. The RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

### 1.    Opinion Evidence

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c)(1), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative

examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590 (quotations & citations omitted). In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Id.*; *see Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992) (stating "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence.").

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), the weight afforded such opinions must nevertheless be explained. S.S.R. 96-2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8. "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

7

### i.   Ms. Price's Letter

Claimant contends that the ALJ failed to properly consider the letter of Ms. Jennifer Price, MSW, LCSWA. Ms. Price served as Claimant's outpatient therapist at A Helping Hand of Wilmington. (R. 550). Ms. Price stated that she had conducted three sessions with Claimant (12/8/2014, 1/12/2015, and 2/5/2015), and had diagnosed Claimant with the following: major depressive disorder, recurrent, moderate; social phobia; and alcohol use disorder, mild in early remission. *Id.* She reported Claimant's daily symptoms were depressed mood, insomnia, appetite disturbance, fatigue, feelings of worthlessness, low motivation, suicidal thoughts, anxiety being around people, being afraid people will judge her, blushing/sweating when around people, and avoiding places/people. *Id.* Ms. Price stated that Claimant had "difficulty following through with treatment suggestions at home or in the community" and "continue[d] to struggle with challenging and changing the negative cognitive thoughts that trigger her depression and anxiety." *Id.*

The ALJ evaluated Ms. Price's letter as follows:

> The undersigned gives little weight to the opinion of the claimant's most recent social worker, Ms. Jennifer Price, found in Exhibit 15F. The statement did not include an opinion regarding functional limitations, but suggests difficulty getting along with other people. Additionally, the undersigned finds that Ms. Price's statement that the claimant had difficulty following through with treatment suggestions at home or in the community[] is certainly suggestive that difficulty following through with treatment suggestions may involve continued use of alcohol. The undersigned finds that the pointed lack of an opinion addressing functional limitations is significant considering the social worker went to the trouble of writing a letter to the Agency. In any event, the treatment notes are not strong enough to indicate that the claimant cannot perform simple tasks of a low stress nature with minimal social demands.

(R. 73).

While Ms. Price described herself as Claimant's outpatient therapist, the ALJ described

8

her as a social worker. Either way, based on Ms. Price's credentials, she is not an acceptable medical source pursuant to the regulations. *See* 20 C.F.R. §§ 404.1513(a), 416.913(a) (defining "acceptable medical sources" as licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). Nonetheless, "evidence from other sources," such as licensed clinical social workers and therapists, may be used "to show the severity of [a claimant's] impairment(s) and how it affects [his] ability" to engage in work-related activities. *Id.* §§ 404.1513(d), 416.913(d); *see also* S.S.R. 06-03p, 2006 WL 2329939, at *2 (explaining the opinions from "other [medical] sources . . . may provide insight into the severity of [a claimant's] impairment and how it affects [a claimant's] ability to function"). Since "other sources" such as social workers and therapists "have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians," their "[o]pinions . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file." S.S.R. 06-03p, 2006 WL 2329939, at *3. Indeed, "depending on the particular facts in a case, and after applying the factors for weighing opinion evidence, an opinion from a medical source who is not an 'acceptable medical source' may outweigh the opinion of an 'acceptable medical source,' including the medical opinion of a treating source." *Id.*

It is unclear to the court how Ms. Price's opinion, even if accorded some weight, would assist Claimant. Ms. Price's diagnoses were all found to be severe impairments by the ALJ. Other than her observations of Claimant's behavior in sessions, Ms. Price fails to assert any limitations or other opinions that conflict with the RFC formulated by the ALJ. Further, the ALJ discussed Ms. Price's letter and explained his reasons for discounting her opinion—namely, that

9

her treatment notes do not support her opinion that Claimant cannot perform simple tasks of a low stress nature with minimal social demands. (R. 73). Accordingly, the court finds that substantial evidence supports the ALJ's reasoning for discounting Ms. Price's opinion, and Claimant's assignment of error with respect to this issue is without merit.

### ii. Dr. Silver's Opinion

Claimant contends the ALJ erred by failing to assign a weight for Dr. Silver's opinion. Pl.'s Mem. [DE-22] at 9. Dr. Silver performed a consultative examination of Claimant on behalf of the state on April 10, 2013. (R. 416). Dr. Silver diagnosed Claimant with bipolar disorder with psychotic features, borderline personality disorder, and diverticulitis. (R. 418). He described her impairments as follows:

> The claimant is a 49-year old white separated woman with symptoms of bipolar disorder including periods of depression with many suicidal attempts and inpatient admissions and also symptoms of mania. She is also very paranoid and has psychotic symptoms in that she has had auditory hallucinations, but currently the lithium and trazodone seem to have helped in that regard. Nonetheless, she is not working now and when she starts, she will again begin to think that people are plotting against her. Accordingly, it is going to be very difficult for her to adjust to the world of work unless there is a diminution in her symptomology[.]

(R. 418–19).

The ALJ discussed Dr. Silver's opinion, including Claimant's alcohol usage, auditory hallucinations, prescriptions of Lithium and Trazodone, Claimant's daily activities, Dr. Silver's conclusion that Claimant demonstrated average memory with intact abstract thinking and judgment, his diagnoses, and that "it would be difficult for the claimant to adjust to the world of work unless there was a diminution in her symptomology." (R. 71–72). However, the ALJ failed to expressly assign weight to Dr. Silver's opinion. However, this error is harmless because it is clear that the ALJ did in fact discuss the opinion, and it is apparent that the ALJ gave some

10

weight to the opinion where he imposed limitations in the RFC to address Claimant's social anxiety. *See Scott v. Colvin*, No. 5:14-CV-291-RJ, 2015 WL 5607830, at \*10 (E.D.N.C. Sept. 23, 2015) (finding harmless error where ALJ discussed the opinion of consultative examiner and it was apparent the ALJ gave some weight to opinion where he imposed limitations on the RFC to address claimant's anxiety and depression). Further, Dr. Silver is not a treating physician, but rather a consultative examiner who examined Claimant one time and therefore has no longitudinal treatment relationship to Claimant. Accordingly, the court finds any error committed by the ALJ with respect to this issue is harmless. *See id.*

### iii. GAF Scores

Claimant contends the ALJ erred by failing to discuss Claimant's GAF scores. Pl.'s Mem. [DE-22] at 9. The Commissioner argues that the ALJ did cite the GAF score of 20 in June 2012, the ALJ referenced the specific page number containing the GAF score of 40 in January 2014 in his discussion, and that, even if the ALJ had failed to reference the GAF scores, that, standing alone, is not a sufficient ground for remand. Def.'s Mem. [DE-24] at 5–6.

The ALJ is not required to recite his or her consideration of each piece of evidence in the record. *See Piney Mountain Coal Co. v. Mays*, 176 F.3d 753, 762, n. 10 (4th Cir. 1999) ("If a reviewing court can discern 'what the ALJ did and why he did it,' the duty of explanation is satisfied") (quoting *Lane Hollow Coal Co. v. Dir., Office of Workers' Comp. Programs*, 137 F.3d 799, 803 (4th Cir. 1998)); *Brewer v. Astrue*, No. 7:07-CV-24-FL, 2008 WL 4682185, at \*3 (E.D.N.C. Oct. 21, 2008) ("[T]he ALJ is not required to comment in the decision on every piece of evidence in the record and the ALJ's failure to discuss a specific piece of evidence is not an indication that the evidence was not considered.") (citing *Green v. Shalala*, 51 F.3d 96, 101 (7th

Cir. 1995)). "A claimant's GAF score must be considered along with all the other relevant evidence of record." *Atkinson v. Astrue*, No. 5:10-CV-298-FL, 2011 WL 3664346, at *11 (E.D.N.C. July 20, 2011), *adopted by* 2011 WL 3664858 (E.D.N.C. Aug. 17, 2011). However, "the failure to reference a Global Assessment Functioning score is not, standing alone, sufficient ground to reverse a disability determination." *Love v. Astrue*, No. 3:11CV14-FDW-DSC, 2011 WL 4899984 (W.D.N.C. Oct. 14, 2011) (citations omitted). This is particularly true when the ALJ considers the records and treatment notes upon which the GAF scores were based. *See id.*

Here, Claimant was assigned a GAF of 20 in June 2012 when she was hospitalized for a suicide attempt. (R. 372). The ALJ cited this GAF score in his RFC discussion, noting also that Claimant's GAF score on discharge was 75. (R. 70) (citing R. 376). In June 2013, Claimant was assigned a GAF of 40 by Cortney Tindal, LCASA-A, LPCA, CRC, who was conducting a clinical assessment of Claimant at A Helping Hand of Wilmington. (R. 464). In January 2014, Claimant was assigned a GAF of 40 by Zoya Picklesimer LPC, LCAS, CSI, CRC, who was also conducting a clinical assessment of Claimant at A Helping Hand of Wilmington. (R. 483). While the ALJ did not explicitly discuss this GAF score of 40, he did cite the page on which the GAF score appears, stating, "Treating notes from Helping Hands dated January 2014 documented that the claimant continued to experience depressive symptoms (Exhibit 10F/35)." (R. 70). Thus, despite the fact that the ALJ did not comment on the GAF score of 40, it is apparent to the court that the ALJ considered the record as a whole because he cited the exact page in which the GAF score is contained. *See Wiggins v. Astrue*, No. 5:11-CV-85-FL, 2012 WL 1016096, at *9 (E.D.N.C. Feb. 2, 2012) (finding ALJ properly evaluated a claimant's mental impairments even though ALJ did not explicitly mention every GAF score in the record where it

was clear ALJ evaluated treatment records during time period of GAF scores), *adopted by* 2012 WL 1016055 (E.D.N.C. Mar. 22, 2012); *Rodgers v. Colvin*, No. 5:13-CV-345-D, 2015 WL 636061, at *12 (E.D.N.C. Feb. 13, 2015). Accordingly, any error in this regard is harmless where the court "can discern what the ALJ did and why he did it." *Mays*, 176 F.3d at 762, n.10 (internal quotations marks and citations omitted).

## 2.    Concentration, Persistence, or Pace

Claimant contends that the ALJ erred by failing to account for her ability to stay on task in light of her moderate limitations in concentration, persistence, or pace. Pl.'s Mem. [DE-22] at 11. The Fourth Circuit held in *Mascio* that "an ALJ does not account 'for a claimant's limitation in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'" 780 F.3d at 638 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1180 (11th Cir. 2011) (joining the Third, Seventh, and Eighth Circuits)). The court explained that "the ability to perform simple tasks differs from the ability to stay on task" and that "[o]nly the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." *Id.* The court implicitly acknowledged there could be instances where a moderate limitation in concentration, persistence, or pace at step three does not require a limitation in RFC; however, the failure to explain such a result is error requiring remand. *Id.* ("Perhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. . . . But because the ALJ here gave no explanation, a remand is in order.").

Here, the ALJ found Claimant to have moderate difficulties with regard to concentration, persistence, or pace and, in the RFC, limited Claimant to performing "simple, repetitive tasks in

13

a work environment where changes in work setting/procedure were infrequent and gradually introduced and where there was only occasional contact with coworkers/supervisors," as well as no "direct customer service work in a team setting, or fast-paced production rate work." (R. 67–68). Cases addressing how the ALJ accounts for limitations in a claimant's ability to maintain pace or to stay on task generally look to whether or not the ALJ has provided a production-work limitation in the RFC. *See, e.g., Sizemore v. Berryhill*, No. 16-1301, 2017 WL 4675712 (4th Cir. Oct. 17, 2017) (holding that limitations working in a low stress *non-production* job with no public contact were sufficient to account for moderate limitations in concentration, persistence, or pace); *Bowen v. Berryhill*, No. 5:16-CV-65-F, 2017 WL 1194462 (E.D.N.C. Mar. 31, 2017) (holding that an RFC of simple, routine, repetitive tasks, *no production* work and only occasional interaction with other people was sufficient to account for moderate limitation in concentration, persistence, or pace). Here, the ALJ provided a production-work limitation in the RFC by limiting Claimant in both task complexity and pace, which sufficiently addresses Claimant's ability to stay on task in light of her moderate difficulties with regard to concentration, persistence, or pace. *See Lee v. Colvin*, No. 5:15-CV-142-D, 2016 WL 816784, at *1–2 (E.D.N.C. Mar. 15, 2016) (finding that an RFC including a limitation against "fast paced or quota based work" comports with *Mascio*). Accordingly, the ALJ did not err in this regard.

### 3.    State Agencies' Decisions

While it is not entirely clear to the court, Claimant seems to contend that the ALJ erred by not considering and weighing the affirmative determinations of disability of both the North Carolina Department of Health and Human Services and the North Carolina Employment Security Commission. Pl.'s Mem. [DE-22] at 12–14. Claimant appears to argue that, because

14

Medicaid and disability were mentioned at the hearing, the ALJ erred by not further developing the record to ascertain more about the adjudications. *Id.* at 12. Claimant states that, "the Plaintiff provided Notice of the Decision of disability by the North Carolina Department of Health and Human Services," and then cites to a page in the hearing transcript that does not relate to a notice of disability. *Id.* (citing R. 107). The court notes Claimant's testimony— located elsewhere in the hearing transcript—that she "just got Medicaid" due to bone spurs. (R. 91–92). Claimant also testified that she was awarded unemployment, but it was revoked when she was admitted into the hospital following a suicide attempt because the state determined she was disabled at that point and therefore incapable of working. (R. 92–93). Other than this testimony, there is nothing in the record with respect to state agency determinations of disability. Therefore, Claimant's argument that the state agencies' determinations deserve to be considered and weighed is without merit. *See Wright v. Colvin*, No. 4:14-CV-24-D, 2015 WL 4910094 (E.D.N.C. July 28, 2015) ("As there is no documentation in the record providing the basis for any compensation Claimant received, there was nothing for the ALJ to consider . . . [i]ndeed, remanding this matter will not resolve this issue given there is no evidence of a disability benefits decision in the case record.") (citing *Wright v. Astrue*, No. 5:09-CV-546-FL, 2010 WL 5056020, at *4 (E.D.N.C. Sept. 16, 2010), *adopted by* 2010 WL 5055899 (E.D.N.C. Dec. 6, 2010)).

With respect to Claimant's argument that the ALJ erred by neglecting his duty to develop the record with respect to these stage agency determinations based on the hearing testimony, the court disagrees. While "the ALJ must fully and fairly develop the record so that a just determination of disability may be made, . . . the ALJ is not required to function as the claimant's

substitute counsel." *Clark v. Shalala*, 28 F.3d 828, 830 (8th Cir. 1994). Moreover, the ALJ's duty to develop the record "does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008); *see also* 42 U.S.C. § 423(d)(5)(B); 20 C.F.R. § 404.1512(d); *Gatling v. Astrue*, No. 2:11-CV-21-FL, 2012 WL 4359435, at *7 (E.D.N.C. June 28, 2012) (rejecting argument that the ALJ erred in failing to develop the record where, at the hearing before the ALJ, claimant's counsel did not indicate or suggest to the ALJ that any medical records from one of the physicians were missing from the administrative record, nor did counsel ask for the ALJ's assistance in obtaining any additional medical records), *adopted by* 2012 WL 4357013 (E.D.N.C. Sep. 21, 2012); *White v. Colvin*, No. 5:13-CV-757-RN, 2015 WL 1438747, at *9 (E.D.N.C. Mar. 27, 2015). During the hearing before the ALJ, Claimant's counsel did not indicate or suggest to the ALJ that the state agencies' determinations were missing from the record, nor did counsel ask for the ALJ's assistance in obtaining these determinations. (R. 91–93). Additionally, Claimant has failed to demonstrate how these determinations might reasonably have changed the ALJ's determination. *See Smith v. Barnhart*, 395 F. Supp. 2d 298, 305 (E.D.N.C. 2005) (the claimant proffered to the court an actual report from the doctor in question); *see also Stahl v. Astrue*, No. 2:07-CV-19, 2008 WL 2565895, at *6 (N.D. W. Va. Nov. 1, 2007) (finding claimant failed to demonstrate how an "updated" medical opinion may have reasonably changed the ALJ's determination). Accordingly, the court finds that the ALJ did not err by failing to obtain the state agencies' determinations on his own accord.

**B.  Listing 12.04C**

Lastly, Claimant contends the ALJ erred by not sufficiently considering Listing 12.04C(2) or (3). Listing 12.04C(2) or (3) is met when a Claimant exhibits a medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychological support, and one of the following: (2) a residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate; or (3) current history of one or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.  The burden of demonstrating that her impairments satisfy this listing is upon Claimant.  *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

With respect to Listing 12.04C, the ALJ stated that he considered whether the "paragraph C" criteria are satisfied, and found that "the evidence fails to establish the presence of the 'paragraph C' criteria."  (R. 67).  In his discussion of the Listings, the ALJ noted Claimant's reports in the medical records of "spend[ing] 4–5 hours performing a wide variety of household chores, yard work, and gardening, as well as preparing complex meals such as beef wellington that she had learned in culinary school (Exhibit 6E)."  *Id.*  He also noted that she accompanies her roommate to the bank once or twice a month.  *Id.*  In the RFC discussion, the ALJ particularly noted that, "all past mental health hospitalizations have involved alcohol and the testimonies were not convincing that the claimant is now abstinent."  (R. 70).

The Commissioner concedes that Claimant likely meets the initial requirement of a

medically documented history of a chronic affective disorder of at least 2 years' duration. Def.'s Mem. [DE-24] at 23. Claimant argues that subparagraph (2) is satisfied "by the opinion of Ms. Susan Peacock['s] warning of 'inpatient hospitalization' without care" and "by the opinion of Dr. Silver [that] 'she is not working now and when she starts, she will again begin to think that people are plotting against her' and 'it is going to be very difficult for her to adjust to the world of work unless there is a diminution of her symptomology.'" Pl.'s Mem. [DE-22] at 17. First, Ms. Peacock's 2015 opinion was presented for the first time to the Appeals Council, and therefore was not before the ALJ at the time the decision was rendered and does not relate to the relevant time period. (R. 7–52). Second, Dr. Silver's opinion alone is insufficient to satisfy this criteria. As discussed above, the ALJ did not expressly assign a weight to Dr. Silver's consultative opinion, however it is clear to the court that the opinion was appropriately considered. Dr. Silver's opinion was formulated based on a one-time examination of Claimant, during which he opined that her medications were helping to diminish symptoms of paranoia and hallucinations. His final opinion that "it is going to be very difficult for her to adjust to the world of work unless there is a diminution in her symptomology" is insufficient to satisfy the subparagraph (2) requirement that "even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate." An opinion that she will have difficulty adjusting to work is not synonymous with decompensation. Therefore, Claimant has failed to meet her burden with respect to subparagraph (2).

Claimant argues that her testimony, her roommate's testimony, and the examinations finding her "socially isolated in her home, her 'safe place'" satisfy subparagraph (3). The term "highly supportive living arrangement" is not a specifically defined term; however, the

18

introductory material to the 12.00 class of Listings explains the following:

> F. *Effects of structured settings*: Particularly in cases involving chronic mental
> disorders, overt symptomology may be controlled or attenuated by psychosocial
> factors such as placement in a hospital, halfway house, board and care facility, or
> other environment that provides similar structure. Highly structured and
> supportive settings may also be found in your home. Such settings may greatly
> reduce the mental demands placed on you. With lowered mental demands, over
> symptoms and signs of the underlying mental disorder may be minimized. At the
> same time, however, your ability to function outside of such a structured or
> supportive setting may not have changed. If your symptomatology is controlled
> or attenuated by psychosocial factors, we must consider your ability to function
> outside of such highly structured settings. For these reasons, identical paragraph
> C criteria are included in 12.00, 12.02, 12.03, and 12.04. The paragraph C
> criterion of 12.06 reflects the uniqueness of agoraphobia, an anxiety disorder
> manifested by an overwhelming fear of leaving the home.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(F). District courts have found a highly structured

setting to exist in a prison environment, *Morris v. Astrue*, 2012 WL 4499348 (D.N.H. Sept. 28,

2012), or at a mental health facility where the plaintiff lived and received treatment and

medication, *Handy v. Astrue*, 2012 WL 1605651 (D. Md. May 4, 2012). In contrast, other courts

have found no highly supportive living arrangement to exist where a plaintiff lived in a group

home and had his meals prepared and his medication distributed but was otherwise free to come

and go as he pleased, *Miller v. Comm'r of Soc. Security*, 2014 WL 916945 (N.D. Ohio Mar. 10,

2014), and where a plaintiff's girlfriend assisted with certain household chores and sometimes

helped manage finances but where the plaintiff otherwise was able to care for his personal needs

on a regular basis, *Santiago v. Colvin*, 2014 WL 718424 (S.D.N.Y. Feb. 25, 2014). *See also*

*Gonsalves v. Astrue*, 2010 WL 1935753, at \*4 (D. Me. May 10, 2010) ("[A] 'highly structured

living arrangement' is something other than living with one's parents while taking care of most

of one's personal needs and making substantial contributions to the household without a high

degree of supervision; it refers to shelters or group homes, inpatient psychiatric treatment, or an

inability to live on one's own.") (internal citations omitted).

Here, Claimant testified that she lived with her roommate, who does all of her shopping and cooking. (R. 91). Her roommate testified that Claimant will leave the house once or twice a month to go to the grocery store or the bank, and that she panics when she drives. (R. 95–96). Claimant's roommate also testified that Claimant has missed doctor's appointments because she has anxiety and does not want to leave the house. (R. 96). The ALJ found Claimant's testimony not entirely credible, and accorded little weigh to Claimant's roommate's testimony, citing medical records in which Claimant admitted to preparing complex meals, performing a variety of household chores, doing yard work, gardening, and crocheting. (R. 70–72). The ALJ also noted that in January 2014, Claimant admitted to receiving a DWI, which he stated "is inconsistent with the testimony regarding fear of driving." (R. 71). However, even if the ALJ had accorded great weight to the testimony, it would not satisfy subparagraph (3), as she has not demonstrated that merely living with a roommate who does the majority of the housework, cooking, and driving is enough to qualify as a "highly supportive living arrangement." Accordingly, the court finds that, even if the ALJ did err by not explicitly relating the evidence to Listing 12.04C, such error is harmless as Claimant has failed to demonstrate that she meets the criteria of either subparagraph (2) or (3) of Listing 12.04C.

## VI. CONCLUSION

For the reasons stated above, Claimant's Motion for Judgment on the Pleadings [DE-21] is DENIED, Defendant's Motion for Judgment on the Pleadings [DE-23] is ALLOWED, and the final decision of the Commissioner is UPHELD.

SO ORDERED, this the 13th day of February 2018.

Robert B. Jones, Jr.
United States Magistrate Judge